UNITED STATES v. UNITED STATES FIDELITY & GUARANTY CO. et al.

(District Court, S. D. Texas, at Houston. December 16, 1919.)

No. 257.

1. BANKRUPTCY ⬤⟿483—ALLOWANCE OF FEES FOR MAILING NOTICES BY CLERK NOT SUBJECT TO COLLATERAL ATTACK.

Under Bankruptcy Act, § 62 (Comp. St. § 9646), providing that administration expenses shall be paid out of the estate after approval by the court, an allowance to the clerk of the District Court for mailing bankruptcy notices, duly approved by the court, is not subject to collateral attack.

2. BANKRUPTCY ⬤⟿483—CLERK NEED NOT PAY TO GOVERNMENT FEES RECEIVED FOR MAILING NOTICES.

Under Bankruptcy Act, §§ 51a, 52a (Comp. St. §§ 9635, 9636), General Order in Bankruptcy No. 35 (89 Fed. xiii, 32 C. C. A. xxxiv), Rev. St. §§ 839, 844 (Comp. St. §§ 1404, 1414), and Act June 28, 1902 (Comp. St. § 1398), relating to compensation and fees of District Court clerks, a clerk cannot be required to account to the government for fees allowed him by the District Court for mailing bankruptcy notices.

At Law. Action by the United States against the United States Fidelity & Guaranty Company, surety, and Joseph B. Dart, administrator. Judgment for defendants.

D. E. Simmons, U. S. Dist. Atty., of Houston, Tex.
S. H. Brashear, of Houston, Tex., for administrator.

HUTCHESON, District Judge. This is an action by the government to recover from the administrator of C. Dart, deceased, for many years clerk of the United States Circuit and District Courts for the Eastern and Southern Districts of Texas, respectively, amounts collected for mailing notices in bankruptcy cases at 10 cents for each notice; total, $390.

This claim arises from an examination and audit of the late clerk's books, and a decision of the Comptroller thereon that the foregoing items should have been reported and accounted for by the clerk as fees or emoluments of office. In each case, and as to each collection which makes up the aggregate amount sued for, the Judge of the District Court of the United States for the Southern District of Texas made and entered the following order:

"Ordered, that the expense account of the referee and clerk, as reported by the referee in the above matter, clerk mailing notices, petition for discharge to creditors, and one for publication, aggregating the sum of $——, be and the same is hereby approved and allowed by the court and ordered paid."

The expense figured and allowed in each case was 10 cents per notice, and the clerk collected that amount from the respective estates under the authority of the order aforesaid.

[1] It will be noted that the government does not attack this allowance as improper, and does not sue for the benefit of the persons or estates who had paid it to recover it back. The government's suit proceeds on the theory that the allowance was proper, as far as the estates of the bankrupts are concerned, but that the fault lies in the failure of the clerk to account to the government for it as emoluments of office. If, however, it be assumed that the action is brought by the government for the use of persons interested in the respective estates, the government's case would be no better, because it is clear that the United States District Court had the authority to allow as charges against the respective estates the reasonable expense of issuing, mailing, and publishing notices, and that, the matter being within its jurisdiction, the judgment of allowance is impregnable against collateral attack.

Section 62 of the Bankruptcy Statutes (Comp. St. § 9646) provides as follows:

"Sec. 62. *Expenses of Administering Estates.*—The actual and necessary expenses incurred by officers in the administration of estates shall, except where other provisions are made for their payment, be reported in detail, under oath, and examined and approved, or disapproved by the court. If approved, they shall be paid or allowed out of the estates in which they were incurred."

In U. S. v. Ward, 257 Fed. 372, —— C. C. A. ——, the court said:

"We are of the opinion that, within the limitations of these provisions, the allowance of necessary expenses of bankruptcy proceedings is within the power and control of the United States District Court, both as to the occasion therefor and the amount thereof, and if parties are aggrieved by the action of the court in this behalf, they must, by petition for review or appeal, bring the matter directly before an appellate tribunal, and that, if this is not done, the judgment becomes final and is not subject to collateral attack."

[2] The amounts then having been rightfully collected, and under the authority of a jurisdictional order of court not appealed from, it is evident that the government has no right to recover in this suit, unless it affirmatively establishes that the amounts were received by the clerk as emoluments of office, or were returnable by the clerk under some

statute or provision of law so requiring him. The only sources of such provisions are the general statutes and statutes governing the clerk's return and administration in bankruptcy. Taking these up in their inverse order, the following statutes and rules in bankruptcy may be briefly adverted to:

Section 51a of the Bankruptcy Act (Comp. St. § 9635) provides:

"Clerks shall respectively account for, as for other fees received by them,. the clerk's fee paid in each case, and such other fees as may be received . for certified copies of records which may be prepared for persons other than officers."

If this statute alone controlled this case, it would be at once apparent that the clerk was under no obligation to account for the sum sued for herein, because its language limits the clerk's obligation to account to the clerk's fee and fees for certified copies, while section 52a of the Bankruptcy Law (Comp. St. § 9636) and General Order 35 in Bankruptcy (89 Fed. xiii, 32 C. C. A. xxxiv), promulgated by the Supreme Court, provide as follows:

"Sec. 52a. Clerks shall * * * receive, as full compensation for their service to each estate, a filing fee of ten dollars except when a fee is not required from a voluntary bankrupt."

General Order 35 is as follows:

"The fees allowed by the act to clerks shall be in full compensation for all services performed by them in regard to filing petitions or other papers required by the act to be filed with them, or, in certifying or delivering copies of records to referees or other officers, or in receiving or paying out money, *but shall not include copies furnished to other persons, or expenses necessarily incurred in publishing or mailing notices or other papers.* (The italics are mine.)

Pretermitting the view that the matter at issue arising out of bankruptcy should be controlled by the bankruptcy statutes, and those alone, it remains to inquire whether under the general statutes governing the matter of the clerk's accounting, the items sued for should have been embraced in the clerk's return. The statutes controlling this matter are the following:

Rev. St. § 839 (Comp. St. § 1404), defines the amount which may be retained out of the clerk's fees as follows:

"No clerk * * * shall be allowed * * * to retain of the fees and emoluments of his office * * * for his personal compensation, * * * a sum exceeding $3,500 a year."

Rev. St. § 844 (Comp. St. § 1414), provides:

"Every district * * * clerk * * * shall, * * * pay into the treasury * * * any surplus of the fees and emoluments of his office, which said return shows to exist over and above the compensation and allowances authorized by law to be retained by him."

The proviso contained in the Appropriation Act of June 28, 1902, chapter 1301 (Comp. St. § 1398), is as follows:

"Each clerk of the District * * * Court shall, on the first days of January and July of each year, or within thirty days thereafter, make to the Attorney General, in such form as he may prescribe, written returns for the half year ending on said days respectively, of all fees and emoluments

of his office of every name and character, and of all necessary expenses of his office, including necessary clerk hire, together with the vouchers for the payment of the same for such last half year; and the word 'emoluments' shall be understood as including all amounts received in connection with the admission of attorneys to practice in the court, all amounts received for services in naturalization proceedings, whether rendered as clerk, as commissioner, or in any other capacity, and all other amounts received for services in any way connected with the clerk's office."

The allegations of the plaintiff's petition, the accounting of the auditor, and the opinion of the Comptroller which underlies this suit, charge that these moneys in controversy constitute fees and emoluments under these general provisions.

In United States v. Mason, 218 U. S. 517, 31 Sup. Ct. 34, 54 L. Ed. 1133, the court says:

"The fees and emoluments are not received by the clerk as moneys or property belonging to the United States, but as the amount allowed him for his compensation and office expenses under the statutes defining his rights and duties, and with respect to the amount payable when the return is made the clerk is not trustee, but debtor."

In Re Loughney (D. C.) 218 Fed. 981, the court declared that the amounts allowed a clerk for sending out notices are not fees, but expenses, while rule 10 of the Supreme Court in bankruptcy cases (89 Fed. vi, 32 C. C. A. xiii) provides:

"Before incurring any expenses in publishing or mailing notices the clerk may require from the bankrupt, or other person in whose behalf the duty is to be performed, indemnity for such expense, and money advanced for this purpose by the bankrupt or other person shall be repaid him out of the estate as part of the cost of administering same."

In U. S. v. MacMillan (D. C.) 209 Fed. 266, appears a clear and to my mind entirely satisfactory statement of the test for determining what moneys are fees and emoluments within the meaning of the statute; the court saying:

"What test is afforded in determining whether a sum of money received by an official is an emolument of his office? Certainly this: That the official do some act or perform some service pursuant to the obligation or sanction of his office to or for the benefit of the one paying the money charged to be an emolument; that the one paying the money has the right to exact from the official the rendition of the service, and the official has the right to exact the money in return—under the official obligation or sanction of the particular office to which the emolument is claimed to attach. To put it another way: The payment moves to the official in consideration of the rendition by him of some official act or service; the official does the act or renders the service by virtue of his office. The official character of the act is his warrant for exacting the payment."

The moneys sought to be recovered in the case at bar were received by the clerk, not ex virtute officii, but under the authority of an order of the court allowing an expense theretofore incurred, which order would have been equally effective had it named as the recipient an entire stranger to the court, and to its general machinery. Neither the bankruptcy statutes nor the general statutes imposing duties upon the clerk form the basis or warrant for the collection of these funds. That warrant is found in the order of the District Court, which fur-

nishes at once the reason and the justification for their retention by the clerk.

Since it follows from these considerations that neither the bankruptcy nor the general statutes require the clerk to account for moneys received by him under these circumstances, it is apparent that the government should take nothing by its suit, and it will be so ordered.